## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **SHOGER JAMDALANI AINSWORTH,** | § | |
| **and WALTER J. AINSWORTH,** | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:14-CV-1942-M** |
| | § | |
| **WELLS FARGO HOME MORTGAGE,** | § | |
| **INC., et al.,** | § | |
| **Defendants.** | § | |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to *Special Order No. 3-251*, this case was automatically referred for full case management. Before the Court for recommendation is *Defendants' Motion for Summary Judgment*, filed October 7, 2016 (doc. 71). Based on the relevant filings, evidence, and applicable law, the motion for summary judgment should be **GRANTED**.

## I. BACKGROUND

This case involves the attempted foreclosure of real property located at 400 Gingko Circle, Irving, Texas 75063 (the Property). (doc. 44 at 2.)[1] On November 3, 2005, Shoger Jamdalani Ainsworth (Shoger)[2] executed a Texas Home Equity Note (Note) in favor of Wells Fargo Home Mortgage, Inc., a division of Wells Fargo Bank, N.A. (Wells Fargo), for a loan in the principal amount of $384,000.00. (docs. 44 at 2-3, 73-1 at 6-10.) Shoger and Walter J. Ainsworth (Plaintiffs) contemporaneously executed a Texas Home Equity Security Instrument (Deed of Trust) that granted a security interest in the Property to Wells Fargo to secure repayment under the Note. (docs. 44 at

---

[1] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

[2] She is identified as "Shogher" Ainsworth in the summary judgment motion's exhibits, but does not dispute that she is the person identified in them. (*See* docs. 73, 73-1, 73-2, 73-3, 76 at 1.)

3, 73-1 at 12-28.) Under the terms of the Note and Deed of Trust, Plaintiffs would be in default if they failed to timely pay the full amount of each required monthly payment and subject to acceleration of the loan and foreclosure proceedings on the Property. (doc. 73-1 at 6-9, 12-28.)

On November 19, 2007, Wells Fargo executed an Assignment of Note and Deed of Trust to "U.S. Bank National Association, as Trustee for CLMTI 2006-WFI," and subsequently executed a Corporate Assignment of Deed of Trust to "correct the assignee" of the original assignment to properly identify the assignee as U.S. Bank National Association, as Trustee for CitiGroup Mortgage Loan Trust Inc., Mortgage Pass-Through Certificates, Series 2006 - WF1 (U.S. Bank) on September 15, 2011. (*See id.* at 32-35.) On November 9, 2012, Wells Fargo executed a Corrective Assignment of Deed of Trust to "fix the scriveners error in the previously recorded assignment . . . as it relates to the assignee." (*See* doc. 73-3.)

Beginning March 1, 2008, Plaintiffs failed to submit their monthly payments under the Note and Deed of Trust and were held in default by Wells Fargo and U.S. Bank (collectively Defendants). (*See* doc. 73-1 at 37-77.) On July 6, 2012, the law firm of Barrett Daffin Frappier Turner & Engel, LLP (Barrett Daffin), Defendants' foreclosure counsel, sent them a Notice of Default and Intent to Accelerate as required under the Note and Deed of Trust. (doc. 73-2 at 7-13.) This notice explained that Plaintiffs were in default for failure to make required payments, and that the maturity date of the Note and Deed of Trust would be accelerated if the default was not timely cured. (*See id*.) On March 7, 2013, Barrett Daffin sent Plaintiffs a notice of acceleration that explained that they had failed to cure the default, and the maturity date under the loan documents had been accelerated as a result. (*Id*. at 29-35.) On March 3, 2014, Defendants filed an Application for Home Equity Foreclosure Order under Tex. R. Civ. P. 736 in state court, which was automatically dismissed upon

the filing of this suit. (doc. 45 at 4.)

On May 5, 2014, Plaintiffs filed this suit against Defendants and Barrett Daffin in state court asserting claims for violation of the Texas Debt Collection Practices Act and quiet title. (doc. 1-4 at 2-9.) Defendants, with Barrett Daffin's consent, removed the action to federal court asserting diversity jurisdiction under 28 U.S.C. § 1332 on May 29, 2014. (docs. 1 at 3, 1-20.) Plaintiffs' claims against Barrett Daffin were dismissed with prejudice on December 22, 2014 (doc. 27), and their claims against Defendants were dismissed with prejudice on March 23, 2016 (doc. 60). Remaining is Defendants' counterclaim for judicial foreclosure. (doc. 62.)

On October 7, 2016, Defendants filed a motion for summary judgment. (docs. 71-73.) With a timely filed response and reply, the motion is ripe for recommendation. (docs. 75, 78.)

## II. EVIDENTIARY OBJECTIONS

Plaintiffs object and move to strike Defendants' declaration from Michael Warren Dickhaut (Dickhaut Declaration) and Exhibits A.3, A.4, A.5, and C. (*See* doc. 76.)

### A.    **Personal Knowledge**

In their first, second, and fourth objections, Plaintiffs object that all of the statements made in the Dickhaut Declaration are not based upon personal knowledge as required under Fed. R. Civ. P. 56, because they are "conclusory, speculative, unsubstantiated, and otherwise fail to demonstrate the basis of [Dickhaut's] knowledge of the matter asserted." (*Id*. at 2-6.)

A "declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the . . . declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). The Federal Rules of Evidence further require that a "witness may testify to a matter only if evidence is introduced

sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. Personal knowledge may be proved by a witness's or an affiant's own testimony, or reasonably inferred from his position or the nature of his participation in the matters to which he swears. *See id.*; *Am. Motorist Ins. Co. v. Southcrest Constr. Inc.*, No. 3:04–CV–2575–M, 2006 WL 995202, *9 (N.D. Tex. 2006) (citing *DIRECTV v. Budden*, 420 F.3d 521, 529-30 (5th Cir. 2005)). It may include inferences and opinions so long as they are grounded in personal observation and experience. *See United States v. Cantu*, 167 F.3d 198, 204 (5th Cir. 1999).

Here, Dickhaut states that he is currently employed as a Vice President Loan Documentation and "fully authorized to make this declaration on behalf of Wells Fargo" because he has "personal knowledge of the facts set forth in this declaration based upon [his] employment with Wells Fargo, review of Wells Fargo's business records, and [his] familiarity with the business practices, record keeping, and servicing practices of Wells Fargo." (doc. 73-1 at 2-3.) He later states that the attached documents, including the assignment and the loan history that are identified in paragraphs 6 and 7,[3] are "either the originals or exact duplicates of the originals." (*Id*. at 4.) This is sufficient to establish that Dickhaut has personal knowledge of the matters set forth in his declaration and the attached exhibits. *See Highpoint Risk Servs. LLC v. Companion Prop. & Cas. Ins. Co.*, No. 3:14-CV-3398-L-BH, 2016 WL 4479511, at *7 (N.D. Tex. Aug. 25, 2016). Based on his position with Wells Fargo and his familiarity with the details of the case, Dickhaut has the requisite personal knowledge to make the statements at issue.  Plaintiffs' first, second, and fourth objections are overruled.

B.    **Hearsay**

In their third and fifth objections, Plaintiffs object to the admissibility of Exhibits A.3, A.4,

---

[3] Plaintiffs' arguments regarding the substance of the assignment and loan history documents, which are identified as Exhibits A.3 and A.4, are considered in the following objection.

and A.5 to the Dickhaut Declaration as hearsay, which consist of the assignment, loan history, and payoff statement related to the loan documents. (*See* docs. 76 at 4-7; 73-1 at 3-4.) Defendants respond that these exhibits are admissible under the business records exception. (doc. 78 at 5-8.)

Except in limited circumstances, an out-of-court statement offered to prove the truth of the matter asserted is hearsay, and subject to certain exceptions, is not admissible as evidence. *See* Fed. R. Evid. 801-05. The proponent of hearsay bears the burden of demonstrating that an exception to the hearsay rule applies. *See Broadcast Music, Inc. v. Tex Border Mgmt., Inc.*, No. 3:10-CV-2524-BH, 2012 WL 4119111, at *4 (N.D. Tex. Sept. 18, 2012). Under Rule 803(6) of the Federal Rules of Evidence, "evidence that would otherwise be inadmissible as hearsay is admissible under the business records exception if the requirements for admitting the evidence 'are shown by the testimony of the custodian or another qualified witness.'" *Cline v. Deutsche Bank Nat. Trust Co.*, No. 3:14-CV-1565-D, 2015 WL 4041791, at *3 (N.D. Tex. July 2, 2015) (quoting Fed. R. Evid. 803(6)(D)). "Rule 803(6) allows business records to be admitted if witnesses testify that the records are integrated into a company's records and relied upon in its day to day operations . . . [e]ven if the document is originally created by another entity, its creator need not testify when the document has been incorporated into the business records of the testifying entity." *Id.* (citations omitted). Rule 803(6)(E) further provides that if the conditions for admitting a business record are met, the evidence is admissible only if "the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." Fed. R. Evid. 803(6)(E). Because there is a presumption in favor of admissibility and trustworthiness, the party seeking to exclude such evidence bears the burden of showing a lack of trustworthiness. *See Moss v. Ole South Real Estate, Inc.*, 933 F.2d 1300, 1305 (5th Cir. 1991)

Here, Dickhaut states that he is "currently employed by [Wells Fargo] as a Vice President

Loan Documentation" and has "personal knowledge of the facts set forth in this declaration based

upon [his] employment with Wells Fargo, review of Wells Fargo's business records, and [his]

familiarity with the business practices, record keeping, and servicing practices of Wells Fargo."

(doc. 73-1 at 2-3.) He states that Exhibits A.3, A.4, and A.5 are:

> [R]ecords kept by Wells Fargo in the regular course of business and were made at
> or near the time of the acts, events, conditions, and/or opinions record therein by an
> employee or representative of Wells Fargo with knowledge of those matters and/or
> self-authenticating documents. It was the regular business practice of Wells Fargo
> for an employee or representative with knowledge of the acts, events, conditions,
> and/or opinions recorded in these records to record or transmit the information
> included in these records. The exhibits attached hereto . . . are either the originals or
> exact duplicates of the originals.

(*Id*. at 4.) This is sufficient to show that Dickhaut is qualified to offer his declaration and to meet

the conditions under Fed. R. Evid. 803(6)(A)-(D) for the business records exception. *See Rosenberg*

*v. Collins*, 624 F.2d 659, 665 (5th Cir. 1980) ("Any person in a position to attest to the authenticity

of certain records is competent to lay the foundation for the admissibility of the records; he need not

have been the preparer of the record, nor must he personally attest to the accuracy of the information

contained in the records."); *see also* Fed. R. Evid. 803(6)(D).

Plaintiffs now have the burden to show that these documents are untrustworthy in accordance

with Rule 803(6)(E). *See Moss*, 933 F.2d at 1305. They argue that these exhibits indicate a lack of

trustworthiness due to alleged errors in the description of these exhibits in paragraphs 6 and 7 of the

Dickhaut Declaration. (doc. 76 at 4-7.)

**1.    *Paragraph 6***

Paragraph 6 of the Dickhaut Declaration explains how Wells Fargo assigned the Note and

Deed of Trust to U.S. Bank and identifies an attached copy of the assignment labeled Exhibit A.3.

6

(doc. 73-1 at 3.) Plaintiffs argue that this shows untrustworthiness because Exhibit A.3 is a corrective instrument dated four years after the assignment that was never recorded, and that it was untimely produced. (doc. 76 at 2-3.)

Exhibit A.3 is a document entitled "Corporate Assignment of Deed of Trust" and evidences an assignment from Wells Fargo to U.S. Bank executed on September 15, 2011, by a Vice President of Loan Documentation for Wells Fargo. (doc. 73-1 at 32.) While Dickhaut's declaration states that this is a "true and correct copy" of the assignment, he never states that it was recorded,[4] only that it was an assignment of interest, which is exactly what Exhibit A.3 purports to be. (*Id.* at 3.) Plaintiffs do not elaborate or identify any authority as to how the alleged late production of the document indicates a lack of trustworthiness in the document itself. (*See* doc. 76.) They fail to show how the source of information or the method of preparation of Exhibit A.3 indicates a lack of trustworthiness.

### 2.    *Paragraph 7*

Paragraph 7 of the Dickhaut Declaration explains that Plaintiffs failed to make payments beginning on March 1, 2008, and identifies an attached copy of the loan history labeled as Exhibit A.4. (doc. 73-1 at 3.) Plaintiffs argue Exhibit A.4 is untrustworthy because it differs from a previously produced loan history, does not "in any way reference or list" Defendants, is not "even readable or logically show[ing] the information [Dickhaut] testifies they contain," and was untimely produced. (*Id.* at 3-4.)

Here, Exhibit A.4 and the previously produced loan history are formatted differently, but

---

[4] Texas law does not require that an assignment be recorded to be valid. *See Green v. JP Morgan Chase Bank, N.A.*, 937 F. Supp. 2d 849, 858 (N.D. Tex. 2013) (explaining that the "recordation of an assignment puts third parties on notice of the assignment, but the recordation itself does not affect the validity of the transfer of interest").

show the same information. Exhibit A.4 contains the updated loan history information since the initial loan history was printed and produced. (*See* docs. 73-1, 77-3.) The third page of the earlier loan history (*see* doc. 77-3 at 4) directly corresponds to page 56 of Exhibit A.4 (*see* doc. 73-1 at 56); both include the same dates, balances, and payments. Plaintiffs do not identify any other specific discrepancy. (*See* doc. 76.) Contrary to their contentions, Exhibit A.4 is also readable, logical, and identifies Wells Fargo as the loan servicer. (*See* doc. 73-1 at 37-70.) They fail to show how the source of information or the method of preparation of Exhibit A.4 indicates a lack of trustworthiness, and their third and fifth objections are overruled.

## C.    <u>Invalid Assignment</u>

In their sixth objection, Plaintiffs object to Exhibit C, the Corrective Assignment of Deed of Trust, as "an invalid and improper assignment." (doc. 76 at 7.) They contend that it does not comply with § 5.028(c) of the Texas Property Code, and therefore constitutes inadmissible hearsay.

Section 5.028(c) explains that a "person who executes a correction instrument under this section shall disclose in the instrument the basis for the person's personal knowledge of the facts relevant to the correction of the recorded original instrument of conveyance." Tex. Prop. Code § 5.028(c). This part of the Texas Property Code does not govern the admissibility of evidence, and Plaintiffs offer no argument or explanation as to how this is a proper basis for an evidentiary or hearsay objection. Plaintiffs' sixth objection is overruled.

## III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "[T]he substantive law will identify which facts are material."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record that reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Id.* at 324. To carry this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-movant must show that the evidence is sufficient to support a resolution of the factual issue in her favor. *Anderson*, 477 U.S. at 249.

"The parties may satisfy their respective burdens by 'citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials.'" *Rooters v. State Farm Lloyds*, 428 F. App'x 441, 445 (5th Cir. 2011) (citing Fed. R. Civ. P. 56(c)(1)). While all of the evidence must be viewed in a light most favorable to the motion's opponent, *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions satisfy the non-movant's summary judgment burden, *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). Summary judgment in favor of the movant is proper if, after adequate time for discovery, the motion's opponent fails to establish the existence of an element essential to his case and as to which he will bear the burden of proof at trial. *Celotex*, 477

9

U.S. at 322-23.[5]

## IV. ANALYSIS

Defendants move for summary judgment on their judicial foreclosure counterclaim.

To show entitlement to an order authorizing foreclosure on a home equity loan in Texas, Defendants must demonstrate that: (1) a debt exists; (2) the debt is secured by a lien created under Article 16, Section 50(a)(6) of the Texas Constitution; (3) Plaintiffs are in default under the Note and Deed of Trust; and (4) Plaintiffs have been properly served with notice of default and notice of acceleration. *See Christiana Trust v. Jacob*, No. 7:15-CV-033-DAE, 2016 WL 4468274, at *2 (W.D. Tex. Aug. 23, 2016) (citing Tex. Prop. Code § 51.002; *Huston v. U.S. Bank Nat'l Ass'n*, 988 F. Supp. 2d 732, 740 (S.D. Tex. 2013), *aff'd*, 583 F. App'x 306 (5th Cir. 2014)).

Here, Defendants proffer the Dickhaut Declaration, the Note, the Deed of Trust, the assignment, the corrective assignment, the payment history, the notice of default, and the notice of acceleration as summary judgment evidence to meet their burden. (*See* docs. 73, 73-1, 73-2, 73-3.) These exhibits show that a debt in the amount of $384,000.000[6] due in monthly installments payable to Wells Fargo exists under the Note (*see* doc. 73-1 at 6-10), and that it is secured by a lien created in the Deed of Trust under Article 16, Section 50(a)(6) of the Texas Constitution (*see id.* at 12- 28). The exhibits show that Plaintiffs are in default under the Note and Deed of Trust because they failed to make payments beginning on March 1, 2008 (*see id.* at 37-77), and that they were properly served

---

[5] Rule 56 imposes no obligation "to sift through the record in search of evidence to support a party's opposition to summary judgment." *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 164 (5th Cir. 2006) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)).

[6] At the time the summary judgment motion was filed, the amount necessary to reinstate the loan was $387,130.98, and the amount necessary to pay off the loan was $752,649.82. (*See* doc. 73-1 at 72-77.)

with a notice of default on July 6, 2012, and a notice of acceleration on March 7, 2013[7] (*see* doc. 73-2). Defendants have met their summary judgment burden to show no genuine issue exists as to any material fact on their counterclaim for judicial foreclosure.

The burden now shifts to Plaintiffs to identify evidence in the record raising a genuine issue of material fact that Defendants are not entitled to a foreclosure order on the Property. Plaintiffs respond that neither Wells Fargo nor U.S. Bank has a valid and binding security interest on the Property as evidenced by the assignment and corrective assignment. (*See* doc. 76 at 10-14.) They instead contend that CLMTI 2006-WF1,[8] incorrectly identified in the initial November 19, 2007 assignment, is the proper mortgagee because Wells Fargo conveyed all of its interest to it, and that the later assignments that corrected the errors in the name of the assignee to U.S. Bank are invalid under § 5.028(c) of the Texas Property Code because they were not executed by someone with personal knowledge. (*See id.*)

When a corrective assignment is executed, the individual "who executes a correction instrument . . . shall disclose in the instrument the basis for the person's personal knowledge of the facts relevant to the correction of the recorded original instrument of conveyance." Tex. Prop. Code § 5.028(c). A recent Texas appellate court opinion has held that corrective instruments under § 5.028

---

[7] The Texas Property Code requires a mortgage servicer to serve a debtor in default with written notice by certified mail stating that the note is in default and providing at least twenty days to cure before any notice of sale can be given. *See* Tex. Prop. Code § 51.002(d). Service is complete when the notice is deposited in the United States mail, postage prepaid and addressed to the debtor at the debtor's last known address. *Id.* at § 51.002(e). The Deed of Trust further requires that the notice specify the default, the action required to cure the default, a date at least thirty days from the date of notice by which the default must be cured, and that failure to cure will result in acceleration of the debt. (*See* doc. 73-1 at 23.) Plaintiffs do not object or identify any error in the service of the notice of default or acceleration. (*See* doc. 76.)

[8] Plaintiffs also point out that this entity is "the subject of a large lawsuit based on misrepresentation and breach of warranties," and that Wells Fargo "was being investigated for their action and conduct" in regard to the loans contained in this trust. (doc. 76 at 13-14.)

are effective if the instrument "substantially complied" by including the "essential requirements" under this statute. *Tregellas v. Archer*, 507 S.W.3d 423, 428 (Tex. App.–Amarillo 2016, pet. filed) (citing *Mo. Pac. R.R. Co. v. Dallas Cnty. Appraisal Dist.*, 732 S.W.2d 717, 721 (Tex. App.–Dallas 1987, no writ).

Here, both the September 15, 2011 assignment and the November 9, 2012 assignment show substantial, if not literal, compliance with § 5.028(c) for the basis of the individual's personal knowledge of the respective documents and execution of the corrective instruments. Both documents were executed by individuals identified as being a Vice President of Loan Documentation at Wells Fargo, and both describe the correct address of the Property, the original principal amount of the loan, the names of all parties, and the incorrect name of the assignee identified in the initial assignment from November 19, 2007. (docs. 73-1 at 32, 73-3 at 2-3); *see Tregellas*, 507 S.W.3d at 428; *see also DIRECTV, Inc.*, 420 F.3d at 530 (explaining that "there is no requirement for a set of magic words" that an affiant must state in order to show personal knowledge). The summary judgment evidence shows that U.S. Bank is the proper mortagee, and Wells Fargo is the proper mortgage servicer of the loan.[9] (*See* docs. 73-1, 73-2, 73-3.)

Plaintiffs' additional argument that the September 15, 2011 assignment was never recorded similarly fails because Texas law does not require that an assignment be recorded to be valid. *See Green v. JP Morgan Chase Bank, N.A.*, 937 F. Supp. 2d 849, 858 (N.D. Tex. 2013) (explaining that the "recordation of an assignment puts third parties on notice of the assignment, but the recordation itself does not affect the validity of the transfer of interest"); *see also Broyles v. Chase Home Fin.*, No. 3:10–CV–2256–G, 2011 WL 1428904, at *2 (N.D. Tex. Apr. 13, 2011) (finding that

---

[9] A corrective instrument under § 5.028(c) relates back to and becomes effective as to the date of the instrument it corrects. *See* Tex. Prop. Code § 5.030.

assignments need not be recorded and noting that "Texas courts have consistently held that recordation is not necessary for liens, deeds, or deeds of trust to be enforceable against the parties to those instruments"). Plaintiffs have failed to meet their summary judgment burden to show a genuine issue of material fact on at least one element of Defendants' counterclaim for foreclosure.[10]

Defendants are entitled to judgment as a matter of law on their counterclaim for judicial foreclosure.

## V.  RECOMMENDATION

Defendants' motion for summary judgment should be **GRANTED**, and they should be authorized to foreclose on their lien on the real property located at 400 Gingko Circle, Irving, Texas 75063 in accordance with the Note, Deed of Trust, and § 51.002 of the Texas Property Code.

**SO RECOMMENDED** on this 30th day of May 2017.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[10] U.S. Bank also has a valid interest to foreclose on the Property because it is the undisputed owner of Note. Under Texas law, it is well-established that the mortgage on real estate follows the promissory note it secures. *See Green v. JP Morgan Chase Bank, N.A.*, 562 F. App'x 238, 240 (5th Cir. 2014); *see Preston v. Seterus, Inc.*, 931 F. Supp. 2d 743, 759 (N.D. Tex. 2013); *see also Thomas v. Deutsche Bank Nat. Trust Co.*, No. 3:12-CV-5014-M, 2014 WL 2980363, at *2 (N.D. Tex. July 2, 2014).

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

14